698 S.E.2d 525 (2010)
In the Matter of P.O., [A Minor Child.].
No. COA10-204.
Court of Appeals of North Carolina.
September 7, 2010.
*527 J. Hal Kinlaw, Jr., Lumberton, for Petitioner-Appellee Robeson County Department of Social Services.
Alston & Bird, LLP, Charlotte, by Lisa Byun Forman, for Guardian ad Litem-Appellee.
Jeffrey L. Miller, Greenville, for Respondent-Appellant Mother.
STEPHENS, Judge.
Respondent Mother ("Respondent") appeals from the trial court's 10 December 2009 permanency planning order awarding legal guardianship of her minor child Patricia[1] to relatives. For the reasons set forth below, we affirm in part and remand for additional findings in part.

I. Procedural History and Factual Background
Respondent suffers from multiple medical conditions, including progressive back pain, fibromyalgia, and depression. In 2004, she had lumbar fusion surgery. In April of 2007, Respondent began experiencing sudden, stabbing pain in the area of her surgical incision. Epidural steroid injections only worsened Respondent's pain. As a result of her conditions, Respondent takes numerous analgesic medications to manage her pain. Drowsiness is a common side effect of Respondent's medications, and combining the medications significantly increases the risk of drowsiness.
The Robeson County Department of Social Services ("DSS") first became involved with Respondent on 19 October 2007, after receiving a report that she had left Patricia, who was about two years old at the time, unattended outside her home for about one hour. Patricia has been diagnosed with Down Syndrome. When a social worker arrived to investigate the report, she found Respondent unconscious on the couch and emergency personnel on the scene. Respondent denied to the social worker that she had any history of drug or alcohol abuse, and claimed that Patricia had only been outside for a few minutes.
Following the initial investigation into the report, DSS requested that Respondent place Patricia in kinship care, and Respondent agreed to place Patricia with Regina, Respondent's cousin. Respondent then moved Patricia to a placement with Patricia's maternal grandmother. On 26 November 2007, the grandmother informed DSS that she could no longer care for Patricia. On 7 December 2007, DSS informed Respondent that she needed to have another adult in the home to supervise Patricia at all times. Respondent's father moved into her home, but moved out after an argument. As a result, on 25 February 2008, Respondent agreed to place Patricia back with Regina.
During this time period, Kelvin Sampson, a Physician's Assistant at the Fairmont Medical Clinic who provided primary health care to Respondent, informed DSS that he was concerned that Respondent's medication affected her parenting ability. Mr. Sampson attempted to find alternative methods to control Respondent's pain, but Respondent indicated to Mr. Sampson that she did not want to reduce her medication unless a court ordered her to do so.
On 14 March 2008, DSS filed a petition alleging that Patricia was a neglected juvenile in that Patricia did not receive proper care, supervision, or discipline from Respondent. The matter came on for hearing on 16 April 2008, and on 9 May 2008 the district court adjudicated Patricia neglected. Respondent maintained legal and physical custody of Patricia, but placement of Patricia remained with Regina.
*528 Between April and September 2008, Respondent was treated for substance abuse on an outpatient basis at Southeastern Recovery Alternatives ("Southeastern"). Southeastern conducted a psychological evaluation and recommended in-patient treatment. Respondent was discharged from Southeastern when she failed to comply with treatment recommendations.
The trial court held a review hearing on 17 July 2008 and entered an amended review order on 25 August 2008. The trial court ordered Respondent to complete substance abuse treatment and to follow all recommendations, to continue to take her medication as prescribed, to follow recommendations from Mr. Sampson, to continue in a pain management program, and to continue supervised visits with Patricia. The court also ordered Respondent to demonstrate that she could stay awake and alert during the visits. Patricia remained in Respondent's custody, but continued in the placement with Regina.
On 7 August 2008, Mr. Sampson again informed DSS that he believed Respondent could not care for Patricia because of her medication, and that his goal was to wean her off her medication. On 9 September 2008, Mr. Sampson requested help from the pain management clinic at Pinehurst in reducing Respondent's medications. Although Respondent agreed on 22 October 2008 to go to inpatient treatment, Respondent did not attend.
On 14 January 2009, the trial court held another review hearing and entered a review order on 16 February 2009. The trial court ordered Respondent to enter inpatient treatment for addiction to pain medication, to obtain medication only as authorized by a physician, to complete pain management if recommended by her inpatient treatment, to follow recommendations by Mr. Sampson to reduce her pain medications, and to continue to attend supervised visitation with Patricia.
On 17 March 2009, Respondent was denied entry into inpatient treatment at Walter B. Jones Alcohol and Drug Abuse Treatment Center ("Walter Jones") because Respondent would not surrender her medication in order to be admitted.
Respondent was then ordered to attend Family Drug Treatment Court and did so on 8 May 2009. However, Respondent fell asleep during the court session and was refused acceptance into the program because she denied she had a problem and expressed no desire to seek alternative treatment for her pain.
Mr. Sampson referred Respondent to Dr. Thomas Florian, a pain management specialist at Hermitage Medical Clinic, for further treatment, and she saw Dr. Florian on 11 and 14 May 2009. After reviewing Respondent's history of pain medications and conducting a physical examination that revealed no neurological problems, Dr. Florian did not continue Respondent on narcotics for pain. Instead, Dr. Florian wrote Respondent a prescription for a medication to treat muscle spasms. Dr. Florian referred Respondent to the UNC Chapel Hill Pain Management Center for a second opinion, where she saw Dr. William Blau. Dr. Blau prescribed Respondent the same medications that she took while she was Mr. Sampson's patient. Respondent continued to see Dr. Blau and clinical psychologist Dr. Jeanne Hernandez at the Pain Management Center, and was still seeing them at the time of the permanency planning hearing.
The case came on for a permanency planning hearing on 12 November 2009. By order entered 10 December 2009, the trial court concluded "[t]hat it is in the best interest of [Patricia] that legal guardianship be awarded Regina and Jimmy[[2]] [ ]." The trial court thus awarded legal guardianship of Patricia to Regina and Jimmy, and released DSS and the guardian ad litem from further responsibility in the proceeding. On 21 December 2009, the trial court entered an order providing that Respondent should still have supervised, weekend visits with Patricia. From the 10 December 2009 permanency planning order, Respondent appeals.

II. Discussion

A. Admission of Evidence
Respondent first argues that the trial court erred by refusing to admit into evidence *529 a document purportedly from Walter Jones and letters purportedly from Dr. Blau and Dr. Hernandez. Respondent conceded at trial that the documents were hearsay but argued that "the statute provides for hearsay evidence specifically in the Permanency Planning hearing so long as it's relevant, reliable and necessary to determine the most appropriate disposition of the case." We find no error in the trial court's refusal to admit the challenged documents.
Our Supreme Court has held that in child custody matters,
[w]henever the trial court is determining the best interest of a child, any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court to exclude cumulative testimony.
In re Shue, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984) (emphasis added). Although hearsay evidence is generally incompetent and thus inadmissible, "[a]t any permanency planning review, ... [t]he court may consider any evidence, including hearsay evidence..., that the court finds to be relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition." N.C. Gen.Stat. § 7B-907(b) (2009) (emphasis added). It is clear from the permissive language of N.C. Gen.Stat. § 7B-907(b) that it is within the sound discretion of the trial court whether to include or exclude hearsay evidence at a permanency planning hearing and, thus, the trial court's decision is reviewed on appeal only for an abuse of discretion. "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." Chicora Country Club, Inc. v. Town of Erwin, 128 N.C.App. 101, 109, 493 S.E.2d 797, 802 (1997) (citation and quotation marks omitted).
At the hearing, Respondent attempted to introduce into evidence a document she claimed was a 17 March 2009 form from Walter Jones that listed the reason Respondent was denied entry into the program as: "No history of substance abusetaking medications as prescribed by her physician." DSS objected to the document, arguing, "I've never seen this before. This is not what they told us. I object." DSS also argued, "I'm going, you know, I'm going to object to its authenticity. I would object to everything. This doctor is notI don't even know who thethis name is. I don't know anything about it." Respondent argued that the document was "relevant, reliable and necessary" to the trial court's decision. However, when the trial court asked, "[DSS] is saying that he had information different, so why is it reliable?[,]" Respondent did not respond. The trial court sustained DSS's objection and refused to admit the document into evidence.
Respondent also sought to introduce into evidence letters purportedly from Dr. Blau and Dr. Hernandez. The letters, dated 17 September, 2 October, and 4 November 2009, indicate that the doctors did not believe Respondent needed to attend a substance abuse program, and that Dr. Blau had not "observed any direct evidence of oversedation or impairment[.]" DSS objected to the admission of the letters stating, "I want to cross-examine somebody that says that." Respondent responded, "Although it's hearsay evidence, Ms. (INAUDIBLE) testified she did, in fact, talk to Dr. Blau about the facts of this letter." The trial court again sustained the objection.
While hearsay evidence may be admitted by the trial court at a permanency planning hearing, given Respondent's failure to offer any explanation as to why the authors of the documents were not present at trial to testify, or to offer any support for her contention that the documents were reliable, and given DSS's strenuous objections to the documents based on a lack of authenticity and reliability, we cannot say the trial court's exclusion of the hearsay evidence was "so arbitrary that it could not have been the result of a reasoned decision." Chicora Country Club, 128 N.C.App. at 109, 493 S.E.2d at 802 (citation and quotation marks omitted). Accordingly, Respondent's argument is overruled.

B. Findings of Fact
Respondent next argues the trial court's findings of fact 24, 25, and 36 were erroneous because there was no evidence to support the findings. We disagree.
*530 This Court's review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law. In re Eckard, 148 N.C.App. 541, 544, 559 S.E.2d 233, 235, disc. review denied, 356 N.C. 163, 568 S.E.2d 192 (2002). If the trial court's findings of fact are supported by any competent evidence, they are conclusive on appeal. In re Weiler, 158 N.C.App. 473, 477, 581 S.E.2d 134, 137 (2003). "The trial court's conclusions of law are reviewable de novo on appeal." In re D.H., 177 N.C.App. 700, 703, 629 S.E.2d 920, 922 (2006) (citation and quotation marks omitted).
The challenged findings of fact state:
24. That Dr. Thomas Florian, Pain Management Dr. at Hermitage Medical Center saw the [R]espondent after a referral from Kelvin Sampson, PAC and after reviewing the medical records formed an opinion that [Respondent] was not suffering from chronic pain. That Dr. Florian wanted to refer [Respondent] to Duke Medical Center but [Respondent] did not want to be w[ea]ned off the prescribed medications which include narcotic medications.
25. That [Respondent] requested to be referred to Chapel Hill[.] Dr. Florian reported that he did not see any [] abnormalities after reviewing the MRI and he did not feel she had a need for narcotic medications. Dr. Florian could not see a reason to prescribe [Respondent] narcotic medications.
....
36. That Charlotte Monroe with the Drug Family Court Treatment Program testified that [Respondent] did [ ] attend one Drug Court session after being ordered by the Court to do so, that on that one occasion of [Respondent] attending Drug Court [Respondent] did fall asleep during the Court session. That due to the lack of participation by [Respondent] in the Family Drug Treatment Court Program, [Respondent] was terminated from the Family Drug Treatment Court program.
Respondent first argues there was no evidence to support the part of finding 24 that Dr. Florian formed an opinion Respondent did not suffer from chronic back pain. We disagree.
Dr. Florian testified that he did not find any "significant abnormalities" on Respondent's MRI scan and could not find evidence of an impingement of any nerve roots that might explain Respondent's complaints of chronic back pain. Dr. Florian further testified, "[b]ased on [Respondent's] physical exam, which did not show any neurologic ... problems going on, [I was reluctant] to continue to write [Respondent] ... prescriptions for narcotics." Accordingly, based on Dr. Florian's physical examination of Respondent, he prescribed only medication to address muscle spasms, not for chronic pain. This evidence supports the trial court's finding that Dr. Florian formed an opinion that Respondent was not suffering from chronic pain.
Respondent next argues there is no competent evidence to support finding 25. Again, we disagree.
Dr. Florian testified as follows:
I reviewed her imaging studies and ... I also reviewed previous records and then took her history and ... she had indicated that she had had injections and physical therapy without benefit[,] and ... in reviewing her imaging studies, I did not identify any ... pain generator that was from [a] nerve that had been ... encroached on by a disk or [a] bone spur and I was a little bit reluctant, based on her physical exam, which didn't show any neurologic... problems going on, to continue to write ... prescriptions for narcotics.
This testimony was competent evidence to support the trial court's finding that "Dr. Florian could not see a reason to prescribe [Respondent] narcotic medications."
Finally, Respondent argues there was no evidence to support finding 36 that Respondent was terminated from the Family Drug Treatment Court Program due to her lack of participation. Again, we disagree.
Charlotte Monroe, a member of the Drug Court Team, testified that Respondent attended only one session of Family Drug Treatment Court, fell asleep during the session, *531 and expressly denied being dependent on prescription drugs. Ms. Monroe further testified that Respondent suffered from certain medical conditions which, in combination with Respondent's denial of having a dependency on pain medication, made it impossible for the Drug Court Team to determine whether the prescriptions were truly needed. These circumstances, Ms. Monroe explained, rendered Respondent "ineligible" for participation in the program. Furthermore, Ms. Monroe testified that if Respondent had participated in an in-patient treatment program for her addiction to pain medication, Respondent would have been considered eligible to participate in Family Drug Treatment Court. We conclude that Ms. Monroe's testimony is ample competent evidence to support the trial court's finding 36 that Respondent's lack of participation in the Family Drug Treatment Court program resulted in her termination from the program.

C. Compliance with N.C. Gen.Stat. § 7B-907
By her final argument, Respondent contends that the trial court committed reversible error by failing to comply with the provisions of N.C. Gen.Stat. § 7B-907.

1. Permanent Plan
Respondent first argues that the trial court's order "did not establish or order a permanent guardianship or even indicate that the guardianship should be the permanent plan; nor did it appoint a guardian of the person" under N.C. Gen.Stat. § 7B-600. We disagree.
"The purpose of [a] permanency planning hearing shall be to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. 7B-907(a) (2009). If, at the conclusion of the hearing, the juvenile is not returned home, the court shall consider the following factors and make written findings regarding those factors that are relevant:
(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;
(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;
(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;
(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;
(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;
(6) Any other criteria the court deems necessary.
N.C. Gen.Stat. § 7B-907(b) (2009). Furthermore, the trial court must also make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile. N.C. Gen.Stat. § 7B-907(c) (2009). Such plan may include appointing a guardian for the juvenile pursuant to N.C. Gen.Stat. § 7B-600 and placing the juvenile in the custody of a relative. N.C. Gen.Stat. § 7B-907(c); N.C. Gen.Stat. § 7B-903(a)(2)(b) (2009).
In this case, the trial court found, inter alia:
17. That [Patricia] is a special needs child who has Down Syndrome and is in need of 24 hour care.
....
19. That [Patricia] has been in kinship care with Regina [ ] since February 26, 2008.
....
21. ... That the use of prescription drugs and [Respondent's] medical conditions ha[ve] impacted the ability [of Respondent] to take care of [Patricia].
22. That ... after being prescribed prescription medications [Respondent] has used four different pharmacies to obtain *532 prescription medications[. T]hat some of those medications were in excess of what would have generally been prescribed by a treating physician and that was sometimes being done without the knowledge of [the] pharmacist who has prescribed similar medication [sic] during the times that [Respondent] obtained different prescriptions from different medical facilities.
....
24. That Dr. Thomas Florian, Pain Management Dr. at Hermitage Medical Center saw the [R]espondent after a referral from Kelvin Sampson, PAC and after reviewing the medical records formed an opinion that [Respondent] was not suffering from chronic pain. That Dr. Florian wanted to refer [Respondent] to Duke Medical Center but [Respondent] did not want to be w[ea]ned off the prescribed medications which included narcotic medications.
25. That [Respondent] requested to be referred to Chapel Hill[.] Dr. Florian reported that he did not see any [ ] abnormalities after reviewing the MRI and he did not feel she had a need for narcotic medications. Dr. Florian could not see a reason to prescribe [Respondent] narcotic medications.
26. That [Respondent] was receiving medications with opiates, that taking of multiple medications with opiates would cause sleepiness and drowsiness.
....
28. ... Mr. Sampson has observed [Respondent] to be drowsy on at least one occasion, that [Respondent] has requested that her medications be reduced but most recently has ask[ed] that her medications be increased....
29. That social worker, Brandy Locklear has transported [Respondent] to treatment and has observed while traveling [Respondent] falling asleep and wak[ing] up and speak[ing] incoherent[ly].
....
36. That Charlotte Monroe with the Drug Family Court Treatment Program testified that [Respondent] did [ ] attend one Drug Court session after being ordered by the Court to do so, that on that one occasion of [Respondent] attending Drug Court [Respondent] did fall asleep during the Court session. That due to the lack of participation by [Respondent] in the Family Drug Treatment Court Program, [Respondent] was terminated from the Family Drug Treatment Court program.
37. That since October, 2007[DSS] has made reasonable efforts to assist [Respondent] in substance abuse treatment. That [Respondent] does have a substance abuse problem related to prescription medications. That [DSS] has provided [Respondent] with services through Southeastern Recovery, Walter B. Jones, Peterkin and Associates and Family Drug Treatment Court and [Respondent] has [not][ ] successfully completed any of the services offered, although given the opportunity.
38. That [Regina] has been the caretaker for [Patricia] for more than two years. That [Regina and Jimmy] take [Patricia] to all her doctor appointments and make[ ] sure that all medications for [Patricia] are filled and that she takes all her medications.
39. That [Regina and Jimmy] have two other children[,] one [who] is 13 and one who is 16 years of age[;] that [Patricia] has a strong bond with [Regina's and Jimmy's] family. That [Regina and Jimmy] are financial[ly] capable of caring for the needs of [Patricia].
40. That [Regina] is the maternal cousin to [Respondent] and [Regina] agrees to allow [Respondent] to visit with [Patricia] as long as [Respondent] is not on any drugs.
Additionally, the trial court's order entered 21 December 2009, from which Respondent does not appeal, made the following findings of fact:
1. An order was entered on November 12, 2009 granting guardianship of the minor child to Regina and Jimmy [ ].
2. Said order failed to specifically address visits for [Respondent].
3. [Respondent] has been exercising supervised weekend visits with her minor child, and the Court is of the opinion that said visits should continue.
*533 Based in part on these findings of fact, the trial court concluded as follows:
2. That [Respondent] did create an injurious environment for [Patricia] by her abuse of prescription drugs in that she was mentally impaired while taking the medications to carry out the needs of [Patricia].
....
4. That the Court believes that there is a high probability that it is not reasonable to believe that [Respondent] will adequately be able to prepare for the return of [Patricia] to her home within the next six months.
5. That [Respondent] has had ample opportunity on many occasions but has failed to sufficiently address her drug dependency over a two year period of time in which [Patricia] has been in the home of [Regina and Jimmy].
....
11. That [Patricia] continues to do well in her current placement with [Regina and Jimmy]. That [Patricia] is receiving all the medical, emotional, psychological and physical support that she needs to be as productive as her situation allows.
....
13. That [Patricia] does receive speech, occupational and physical therapy and will continue to receive these services to help with her everyday needs.
14. That [Regina and Jimmy] do have a stable home and have the ability and are financially capable of caring for [Patricia]. [Regina and Jimmy] are willing and able to provide for the needs of [Patricia].
15. That because of [Respondent's] possible deteriorating medical condition ..., it is [ ] the Court's opinion that the pain and other impairment that [Respondent] suffers from will not improve within the next six months.
16. That [DSS] has exhausted all reasonable and available means to reunite [Respondent] with [Patricia]. That all reasonable efforts have [been] exhausted and [DSS] has made diligent and specific efforts to assist [Respondent] in her substance abuse recovery.
....
18. That it would not be in the best interest of [Patricia] to return to the home of [Respondent], that it would be contrary to the welfare of [Patricia] to be return[ed] to the home of [Respondent]. That [Respondent] continues to suffer from substance abuse problems of prescription medications and also other physical ailments which hinder her from being able to properly care for [Patricia].
19. That [Respondent] has failed to make reasonable progress in a substantial period of time of almost two years in correcting the circumstances and conditions which led to [Patricia's] removal.
....
21. That it is in the best interest of [Patricia] that legal guardianship be awarded to Regina and Jimmy [ ].
The trial court thus ordered:
1. That it is in the best interest of [Patricia] that legal guardianship be awarded to relatives, Regina and Jimmy [ ].
2. That Regina and Jimmy [ ] shall have the authority to arrange and sign for any medical, dental, psychiatric, psychological, [or] other health care treatment or evaluation, enrollment in school, making educational decisions, enlisting in the armed forces or marriage that is deemed to be in the best interest of [Patricia].
3. That [DSS] and the Guardian ad Litem are released from further responsibility in this proceeding.
The findings of fact comprehensively address factors 1, 2, 4, 5, and 6 enumerated in N.C. Gen.Stat. § 7B-907(b) and fully support the trial court's conclusion that guardianship with Regina and Jimmy is in Patricia's best interest. Although the order does not explicitly use the term "permanent" in declaring the best plan of care to achieve a safe, permanent home within a reasonable period of time for Patricia, "[t]he purpose of [a] permanency planning hearing shall be to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen.Stat. § 7B-907(a) (emphasis added). It can thus be reasonably inferred from the findings of fact, conclusions of law, and decretal provisions which award *534 guardianship to Regina and Jimmy, release DSS and the guardian ad litem from further responsibilities in this matter, and do not outline any further steps that Respondent must take, that the trial court intended to establish guardianship with Regina and Jimmy as the permanent plan for Patricia. Additionally, although the trial court did not explicitly state that it was appointing Regina and Jimmy as Patricia's guardians under N.C. Gen.Stat. § 7B-600, it can be reasonably inferred from the trial court's order, which states "[t]hat Regina and Jimmy [ ] shall have the authority to arrange and sign for any medical, dental, psychiatric, psychological, [or] other health care treatment or evaluation, enrollment in school, making educational decisions, enlisting in the armed forces or marriage that is deemed to be in the best interest of [Patricia,]" that Regina and Jimmy were appointed Patricia's guardians in accordance with that statute. See N.C. Gen.Stat. § 7B-600 ("The guardian may consent to certain actions on the part of the juvenile in place of the parent including (i) marriage, (ii) enlisting in the armed forces, and (iii) enrollment in school. The guardian may also consent to any necessary remedial, psychological, medical, or surgical treatment for the juvenile.").
Nonetheless, Respondent argues that even if the trial court established guardianship as the permanent plan for Patricia, the trial court failed to establish the rights and responsibilities that should remain with Respondent pursuant to N.C. Gen.Stat. § 7B-907(b)(2). We disagree.
The trial court's order entered 21 December 2009, from which Respondent does not appeal, ordered:
A. That [Respondent] shall exercise visits with her minor child every other weekend, from Friday 6:00 p.m. to the following Sunday at 6:00 p.m., beginning December 25, 2009.
B. Said visits shall be supervised by either the maternal grandmother, maternal grandfather or the maternal uncle of the minor child.
This order clarifies Respondent's visitation rights with respect to Patricia. Moreover, in the order on appeal, the trial court specifically states that Regina and Jimmy "shall have the authority to arrange and sign for any medical, dental, psychiatric, psychological, [or] other health care treatment or evaluation, enrollment in school, making educational decisions, enlisting in the armed forces or marriage that is deemed to be in the best interest of [Patricia]." Thus, these orders together give full custodial and legal rights of Patricia to Regina and Jimmy, with supervised visitation rights to Respondent.
Respondent further argues that the trial court erred by failing to "direct DSS to make reasonable efforts in accordance with a permanent plan, or to complete steps to finalize a permanent plan, or to document a case plan[,]" as required by N.C. Gen.Stat. § 7B-907(c). Again, we disagree.
Pursuant to N.C. Gen.Stat. § 7B-907(c),
the court shall enter an order consistent with its findings that directs the department of social services to make reasonable efforts to place the juvenile in a timely manner in accordance with the permanent plan, to complete whatever steps are necessary to finalize the permanent placement of the juvenile, and to document such steps in the juvenile's case plan.
N.C. Gen.Stat. § 7B-907(c) (emphasis added). In this case, "consistent with its findings" that "[DSS] has exhausted all reasonable and available means to reunite [Respondent] with [Patricia]" and that "it is in the best interest of [Patricia] that legal guardianship be awarded to Regina and Jimmy[,]" the trial court ordered that guardianship of Patricia be awarded to Regina and Jimmy, and released DSS and the guardian ad litem from further responsibility in this proceeding. As Patricia had already been living with Regina and Jimmy for two years before entry of the order at issue, no further steps were necessary to place Patricia in Regina and Jimmy's home in a timely manner or to finalize Patricia's permanent plan. Accordingly, we conclude that the trial court's order complied with N.C. Gen.Stat. § 7B-907(c).

*535 2. Permanency Planning Review

Respondent next argues that the trial court erred by failing to provide for a permanency planning review hearing as required by N.C. Gen.Stat. § 7B-907(a). We agree.
Pursuant to N.C. Gen.Stat. § 7B-907(a), "[i]n any case where custody is removed from a parent, ... the judge shall conduct a review hearing designated as a permanency planning hearing within 12 months after the date of the initial order removing custody[.]" N.C. Gen.Stat. § 7B-907(a). "Subsequent permanency planning hearings shall be held at least every six months thereafter, or earlier as set by the court, to review the progress made in finalizing the permanent plan for the juvenile, or if necessary, to make a new permanent plan for the juvenile." Id. However, "[i]f at any time ... findings are made in accordance with [N.C. Gen.Stat. §] 7B-906(b), the court shall be relieved of the duty to conduct periodic judicial reviews of the placement." N.C. Gen.Stat. § 7B-907(c). Pursuant to N.C. Gen.Stat. § 7B-906(b),
the court may waive the holding of review hearings required ... if the court finds by clear, cogent, and convincing evidence that:
(1) The juvenile has resided with a relative or has been in the custody of another suitable person for a period of at least one year;
(2) The placement is stable and continuation of the placement is in the juvenile's best interests;
(3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months;
(4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion; and
(5) The court order has designated the relative or other suitable person as the juvenile's permanent caretaker or guardian of the person.
N.C. Gen.Stat. § 7B-906(b).
In this case, the trial court did not explicitly waive the holding of future permanency planning hearings. However, by virtue of the fact that the trial court released DSS and the guardian ad litem from further responsibility in this proceeding, it can be inferred that the trial court did not contemplate a future permanency planning hearing under N.C. Gen.Stat. § 7B-907 (a). Even so, the trial court failed to make findings of fact regarding all of the criteria set forth in N.C. Gen.Stat. § 7B-906(b). Specifically, the trial court failed to find that "[n]either the juvenile's best interests nor the rights of any party require that review hearings be held every six months" or that "[a]ll parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion[.]" N.C. Gen.Stat. § 7B-906(b)(3) and (4). As the trial court's order fails to satisfy the requirements of N.C. Gen.Stat. § 7B-906(b), we reverse on this issue and remand the case to the trial court to make additional findings of fact consistent with this opinion and the requirements of N.C. Gen. Stat. § 7B-906(b).
AFFIRMED in part; REVERSED and REMANDED in part.
Judges STEELMAN and ERVIN concur.
NOTES
[1] "Patricia" is a pseudonym.
[2] Jimmy is Regina's husband.