An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-807

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

IN THE MATTER OF:

A.G.                                          Durham County
                                              No. 07 J 23


Appeal by respondent-mother from order entered 2 April 2013 by Judge Brian C. Wilks in Durham County District Court. Heard in the Court of Appeals 13 January 2014.

> *Robin K. Martinek for petitioner-appellee Durham County Department of Social Services.*
>
> *Duncan B. McCormick for respondent-appellant mother.*
>
> *Derrick J. Hensley for guardian ad litem.*

HUNTER, Robert C., Judge.

Respondent appeals from an order that ceased reunification efforts with her minor child, A.G. ("Andy") and placed him in the legal and physical custody of a former foster parent. We affirm.

**Background**

On 25 January 2007, the Durham County Department of Social Services ("DSS") filed a petition alleging that Andy and two siblings were neglected juveniles. DSS assumed non-secure custody of the children that same day. After a hearing in April and May of 2007, the trial court entered an order that adjudicated Andy and his siblings neglected and dependent juveniles and continued them in the legal and physical custody of DSS. The court found that respondent's mental health conditions interfered with her judgment and impaired her ability to care for and protect her children. To remedy the conditions that led to or contributed to the removal of the children from her custody, the trial court directed respondent to obtain a full psychological evaluation, including an assessment for medication, and that she receive recommended treatment.

For several months, respondent worked with DSS to correct the conditions that led to the removal of Andy and his siblings from her home. The trial court rewarded respondent's efforts when, by order dated 7 April 2010, it returned Andy and his siblings to her custody. However, on 12 May 2010, DSS filed another petition alleging Andy and his siblings were neglected juveniles, and again took non-secure custody of the children. After a hearing on 1 December 2010, the trial court entered an

order on 6 January 2011 adjudicating Andy and two of his siblings neglected juveniles. The court found that respondent was unable to manage her frustrations with her children, which resulted in her use of inappropriate discipline with the children. Nevertheless, the court returned Andy and his siblings to respondent's custody pursuant to a court-ordered protection plan, which specifically included no physical punishment.

After his return home, significant conflict developed between Andy and respondent, resulting in his placement in a rapid response placement provided by DSS to address his aggressive behavior and language towards respondent. Andy returned home on 14 June 2011, but on 4 July 2011 respondent called the police after an altercation with Andy. Andy was charged with simple assault, and while being taken to a relative's home to spend the night he disclosed suicidal ideation. Andy was transported to the emergency room, and admitted to UNC Hospital the next day. On 12 July 2011, Andy was released from the hospital with the agreement that he not return to respondent's home. Respondent agreed to place Andy with a former foster parent.

Andy continued to live with his former foster parent for the next several months and had biweekly supervised visitation with respondent and his siblings. After a hearing on 13 December 2012, the trial court entered an order changing the permanent plan for Andy to custody with the foster parent and granting legal and physical custody of Andy to the foster parent. The court further found that Andy's reunification with respondent was not a viable option, and reunification efforts should therefore cease. Respondent appeals.

**Discussion**

We first address respondent's argument that the trial court erred in making finding of fact number fifteen, which states:

> The Mother continues to believe that she has never done anything to harm the child or contribute to the child being out of the home. She does not believe the child has suffered trauma.

We review this finding of fact to determine whether it is supported by competent evidence in the record. *In re P.O.*, 207 N.C. App. 35, 41, 698 S.E.2d 525, 530 (2010).

In the 2011 order adjudicating Andy neglected, the trial court found that respondent "never denied that she used physical punishment to discipline the children[, and] contends her children have never been hurt and that her actions were

exaggerated and embellished by others." Respondent continued to blame others for Andy's behavioral problems at the permanency planning hearing, where she asserted that his current problems were caused by people telling him that if he were not in her custody he could become a United States citizen. Additionally, when specifically asked if she thought she had done anything to contribute to the trauma Andy has experienced, she replied that "things did happen" and "things did affect him," but stated that she did not "think that the things that happen[ed] in the past" were the cause of Andy's current behavioral problems. Respondent's testimony reveals that she has not accepted that her inappropriate discipline of Andy and failure to provide proper care for Andy contributed to his removal from her home, and were an underlying cause of the trauma he continues to suffer. Accordingly, we overrule this argument.

Respondent also argues the trial court erred in ordering that DSS cease providing her with efforts to reunify her with Andy. Respondent contends that the trial court's findings of fact regarding her visitation with Andy and participation in therapy do not support its conclusion. Respondent further argues that the court erred in concluding that reunification was

inconsistent with Andy's health, safety, and need for a permanent home within a reasonable time. We disagree.

A trial court may order that

> reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
>
> (1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]

N.C. Gen. Stat. § 7B-507(b)(1) (2013). "This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re C.M.*, 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007).

Here, the trial court found:

> 6. [Andy] continues to receive therapy with Mary Sue Cherney. He continues to make progress in therapy learning to understand mature, interpersonal relationships and reciprocity. [Andy] has started taking [medication] as recommended by Dr. Chevy from the Center for Child and Family Health to address depressive symptoms and make [him] more receptive to therapy. Since being on the medication, his behavior has leveled out and he is sleeping a lot better.

7. [Andy] visits with [respondent] and his siblings every other Thursday, supervised by Durham DSS at the Genesis Home from 4 pm to 5 pm. The interaction between [Andy] and [respondent] has not changed much since the last hearing. There continues to be minimal communication between the two. [Andy] indicates that the visits are not for him to visit with his mother but to spend time with his sisters.

. . . .

9. [Andy] continues to do well in [the foster parent's] home. She is providing a safe and nurturing environment for [Andy] and ensuring that all of his basic needs are being met.

. . . .

12. [Respondent] meets with Karla Siu, Family Therapist, once every three weeks and has missed one appointment since the last court date. This session was rescheduled. [Andy] has not been a part of these sessions. It is unknown when family therapy that will incorporate [Andy] will begin. Ms. Siu feels that family therapy would be more damaging than helpful at this time and there is a need to get to know [respondent] before engaging [Andy]. While [respondent] is keeping her appointments, she has not been very engaged in the sessions. She has indicated that she does not trust Karla Siu and is frustrated with the system. [Respondent's] therapy is anticipated to take approximately one year of weekly therapy. It is predicted that [respondent] will be ready for family therapy after she makes positive progress in two of her outlined goals for two straight months. It is unknown when this will happen.

13. [Andy] is not ready for family therapy at this time, but he is working with Mary Sue Cherney towards preparing for family therapy.

. . . .

16. [Respondent] has been consistent with visitation, but there continues to be problematic communication. [Respondent] was informed that [Andy] was placed on medication. She continues to indicate that she does not want [Andy] on medication.

Respondent does not challenge these findings, and they are thus binding on appeal. *In re I.T.P-L.*, 194 N.C. App. 453, 462, 670 S.E.2d 282, 287 (2008), *disc. review denied*, 363 N.C. 581, 681 S.E.2d 783 (2009).

We agree with respondent that the trial court's findings support her contention that she has been diligent in attending her visitation with Andy and her therapy sessions. However, diligent attendance is insufficient in this instance. Respondent and Andy have been involved with DSS since 2007, and have been under the court's supervision pursuant to an adjudication of neglect entered in January of 2011. Andy made progress in his therapy due in part to prescribed medication, which respondent does not want Andy to take. Nonetheless, it is still unclear when he will be ready to engage in family therapy with respondent, a pre-cursor to any reunification between the

two. Over the two years prior to the entry of the permanency planning order at issue, respondent made negligible progress in her therapy sessions and it is unknown when she will achieve sufficient progress to begin family therapy with Andy. Additionally, as discussed above, respondent continues to believe that she has never harmed Andy or contributed to his removal from her home.

Given respondent's lack of progress in her own therapy and opposition to medication that is assisting Andy's therapy, we hold the trial court's findings of fact show that reunification efforts would be futile or inconsistent with Andy's health, safety, and need for a safe, permanent home within a reasonable period of time. We conclude that respondent has not shown the trial court abused its discretion in directing that reunification efforts cease, and overrule this argument.

Similarly, we overrule respondent's argument that the trial court abused its discretion by changing the permanent plan for Andy to custody with the former foster parent and awarding her custody of Andy. The purpose of a permanency planning hearing is to "develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. §

7B-907(a) (2011).[1] "This Court's review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law." *In re P.O.*, 207 N.C. App. at 41, 698 S.E.2d at 530. "We review a trial court's determination as to the best interest of the child for an abuse of discretion." *In re D.S.A.*, 181 N.C. App. 715, 720, 641 S.E.2d 18, 22 (2007).

The trial court's conclusion to set the permanent plan for Andy as custody with the former foster parent, and award her custody of Andy is fully supported by its findings detailing the uncertainty as to when family therapy could commence and respondent's failure to: (1) make progress with her therapy; (2) acknowledge her role in contributing to the harm and trauma Andy suffered over the years; and (3) improve her communication and relationship with Andy during visitation. Based upon these findings, and her demonstrated opposition to Andy's use of medication to complement his mental health therapy, we cannot say the trial court abused its discretion in setting the

---

[1] N.C. Gen. Stat. § 7B-907 has since been repealed and replaced by N.C. Gen. Stat. § 7B-906.1. *See* 2013 Sess. Laws 129, §§ 25-26. However, N.C. Gen. Stat. § 7B-906.1 is only applicable to "actions filed or pending on or after" 1 October 2013. 2013 Sess. Laws 129, § 41. Here, the trial court entered the order from which respondent appeals on 2 April 2013. Thus, we apply section 7B-907.

permanent plan for Andy and awarding custody of Andy to the former foster parent pursuant to that plan. Accordingly, we overrule this argument.

### Conclusion

After careful review, we affirm the trial court's order.


AFFIRMED.

Judges BRYANT and STEELMAN concur.

Report per Rule 30(e).