IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-654

 Filed: 4 December 2018

Union County, Nos. 17 JA 44-45

IN THE MATTER OF: Y.I., J.I.

 Appeal by respondent-mother from order entered 10 April 2018 by Judge

Joseph Williams in Union County District Court. Heard in the Court of Appeals 8

November 2018.

 Perry, Bundy, Plyler & Long, LLP, by Ashley J. McBride and Dale Ann Plyler,
 for petitioner-appellee Union County Division of Social Services.

 Parent Defender Wendy Sotolongo, by Deputy Parent Defender Annick Lenoir-
 Peek, for respondent-appellant mother.

 No brief filed for guardian ad litem.

 ZACHARY, Judge.

 Respondent-mother appeals from an order awarding custody of her minor

children, Y.I. (“Yvan”) and J.I. (“John”), to their father, “Jasper.”1 We affirm in part,

vacate in part and remand.

 John was born in April 2008, and Yvan was born in September 2009. On 3

November 2016, the Union County Division of Social Services (“DSS”) received a

report that the children had witnessed Respondent-mother’s boyfriend, “Alex,”

 1 Pseudonyms are used throughout the opinion to protect the identity of the juveniles and for
ease of reading.
 IN RE: Y.I. & J.I.

 Opinion of the Court

punching, kicking, and dragging Respondent-mother. Both children also reported

having been physically abused by Alex. On 27 March 2017, DSS received another

report that Respondent-mother had injuries to her right eye and right arm that

resulted from being assaulted by Alex. A social worker helped Respondent-mother

and the children get admitted to a domestic violence shelter, but Respondent-mother

left the shelter with the children within hours after their admission and returned to

Alex’s residence.

 On 28 March 2017, DSS filed juvenile petitions alleging that the children were

neglected and dependent. DSS received nonsecure custody of the children. Following

a 24 May 2017 adjudicatory and dispositional hearing, the trial court entered its 26

June 2017 order adjudicating the children to be neglected and dependent and

ordering Respondent-mother, inter alia, to comply with her case plan, complete a

psychological evaluation and comply with any resulting recommendations, complete

domestic violence counseling, and engage in parenting classes.

 The trial court held a permanency planning hearing on 7 March 2018, after

which the court entered an order on 10 April 2018 awarding custody of the children

to Jasper, as well as relieving DSS and the attorneys of record of any further

responsibility in the case. Respondent-mother filed written notice of appeal on 19

April 2018.

 Standard of Review

 -2-
 IN RE: Y.I. & J.I.

 Opinion of the Court

 “[Appellate] review of a permanency planning order is limited to whether there

is competent evidence in the record to support the findings and whether the findings

support the conclusions of law. If the trial court’s findings of fact are supported by

any competent evidence, they are conclusive on appeal.” In re P.O., 207 N.C. App. 35,

41, 698 S.E.2d 525, 530 (2010) (citations omitted).

 Award of Custody

 Respondent-mother first contends that the trial court erred in failing to return

custody of the children to her. We disagree.

 At any permanency planning hearing, the Juvenile Code permits the trial court

to “place the child in the custody of either parent . . . found by the court to be suitable

and found by the court to be in the best interests of the juvenile.” N.C. Gen. Stat. §

7B-906.1(i) (2017). “We review a trial court’s determination as to the best interest of

the child for an abuse of discretion.” In re J.H., 244 N.C. App. 255, 269, 780 S.E.2d

228, 238 (2015) (citation and quotation marks omitted).

 In the present case, the trial court made the following findings relevant to its

determination that custody with Jasper was in the children’s best interests:

 8. Some of the issues that led to the removal of the children
 from the home of [Respondent-mother] . . . included
 Domestic Violence and Mental Health Concerns. The court
 has consistently ordered [Respondent-mother] to
 participate in Domestic Violence Counseling, Address the
 Mental Health concerns and participate in parenting
 classes.

 -3-
 IN RE: Y.I. & J.I.

 Opinion of the Court

9. [Respondent-Mother] has made it clear to DSS that she
does not intend to participate in parenting classes.

10. [Respondent-mother] participated in a psychological
assessment with Dr. Popper which was completed in
October of 2017. [Respondent-mother] has been identified
as having PTSD which she attributes to the Domestic
Violence between herself and [Jasper].

11. Dr. Popper is of the opinion that [Respondent-mother]
is reluctant to examine herself as to what steps she can
take, because she is a victim of Domestic Violence.

12. [Respondent-mother] is reluctant to engage in Domestic
Violence Counseling and Parenting Classes because Dr.
Popper did not specifically recommend those services.
[Respondent-mother] has not made substantial progress to
address the issues that caused the juveniles to be removed
from her home.

 ....

15. The juveniles were placed with [their paternal aunt]
from September 8, 2017 until February 14, 2018 at which
time they were moved to the home of [Jasper].

16. Since being [with Jasper] in Catawba County the
juveniles have made significant progress with their
educational needs. [John] is no longer in need of an
Individual Education Plan.

17. [Jasper] did not originally participate in this matter
because he was not aware that the juveniles were in Foster
Care. He resided in Mexico.

18. When [Jasper] learned that the juveniles were in Foster
Care in or around August of 2017, he returned to North
Carolina and immediately began working with DSS on an
Out of Home Services Agreement.

 -4-
 IN RE: Y.I. & J.I.

 Opinion of the Court

19. [Jasper] has completed the Triple P Parenting program
and has completed counseling to address prior domestic
violence with [Respondent-mother].

 ....

23. [Respondent-mother] is not making adequate progress
within a reasonable period of time under the plan.

24. [Jasper] is making adequate progress within a
reasonable period of time under the plan.

25. [Respondent-mother] is not actively participating in or
cooperating with the plan, DSS, and the guardian ad litem
for the juveniles.

26. [Jasper] is actively participating in or cooperating with
the plan, DSS, and the guardian ad litem for the juveniles.

27. (A) The juveniles’ return [to] the home of [Respondent-
mother] would be contrary to the juveniles’ best interest.

 ....

28. The following progress has been made toward
alleviating or mitigating the problems that necessitated
placement: [Jasper] has completed parenting classes,
followed all activities outlined in his Out of Home Services
Agreement and secured safe and stable housing.
[Respondent-mother] has completed a comprehensive
phycological [sic] exam.

 ....

33. The court has been presented sufficient evidence and
thus finds that the juveniles will receive proper care and
supervision in a safe home if they are allowed [to] return to
the legal and physical custody of [Jasper].

34. It is in the juveniles’ best interest for their custody to

 -5-
 IN RE: Y.I. & J.I.

 Opinion of the Court

 be granted to [Jasper].

 Respondent-mother first appears to challenge the statement in finding 8 that

domestic violence was one of the issues that led to the removal of the children from

her home. Setting aside the fact that Respondent-mother fails to specifically

challenge this statement as unsupported by the evidence, we nonetheless find support

in the trial court’s 26 June 2017 adjudicatory order, wherein the court stated that it

was adjudicating the children to be neglected juveniles, based in part on the fact that

Respondent-mother “has been the victim of Domestic Violence perpetrated by the

father of the juveniles, [Jasper].” The order further stated that Respondent-mother

was “in need of domestic violence counseling as [a] caretaker[ ] of the juveniles.” At

the permanency planning hearing, a DSS social worker confirmed that “part of the

concern when these children came into DSS custody was domestic violence

altercations between [Respondent-mother] and [her domestic partner.]” Thus, the

challenged statement is supported by the trial court’s 26 June 2017 order and

testimony from the permanency planning hearing.

 Respondent-mother further contends that findings 12, 23, and 26 “are contrary

to the evidence presented[,]” but wholly fails to support her contention with

explanation or citation to the record. To the extent Respondent-mother purports to

challenge these findings, she has abandoned her challenge. See N.C.R. App. P.

28(b)(6) (“Issues not presented in a party’s brief, or in support of which no reason or

 -6-
 IN RE: Y.I. & J.I.

 Opinion of the Court

argument is stated, will be taken as abandoned.”). Respondent-mother does not

purport to challenge any of the trial court’s other findings, and those findings are

therefore binding on appeal. In re C.B., 180 N.C. App. 221, 223, 636 S.E.2d 336, 337

(2006), aff’d per curiam, 361 N.C. 345, 643 S.E.2d 587 (2007).

 The trial court’s findings demonstrate that once Jasper learned of the

children’s removal from the home, he immediately began working with DSS and had

completed all that was asked of him by the time of the 10 April 2018 permanency

planning hearing. The children were placed with Jasper in February 2018 and

thereafter “made significant progress with their educational needs.” While

Respondent-mother participated in a psychological exam, she had not completed

domestic violence or parenting classes. At the time of the hearing, Respondent-

mother was not actively participating in her case plan and was not working with DSS

or the children’s guardian ad litem. In light of these findings, we cannot say that the

trial court abused its discretion in determining that it was in the children’s best

interest to award custody to Jasper.

 Retention of Juvenile Jurisdiction

 Respondent-mother next contends that the trial court erred in failing to

transfer the case to a Chapter 50 action. While Respondent-mother frames her

argument in this way, the substance of her argument appears to be that the trial

 -7-
 IN RE: Y.I. & J.I.

 Opinion of the Court

court erred in failing to make a specific finding as to whether jurisdiction should be

retained. Again, we disagree.

 N.C. Gen. Stat. § 7B-911(a) provides that, “[u]pon placing custody with a

parent or other appropriate person, the court shall determine whether or not

jurisdiction in the juvenile proceeding should be terminated and custody of the

juvenile awarded to a parent or other appropriate person pursuant to [Chapter 50].”

N.C. Gen. Stat. § 7B-911(a) (2017). The statute does not expressly require that the

court make a finding as to whether jurisdiction in the juvenile proceeding should be

terminated and the matter transferred to a Chapter 50 action. However, in the event

the trial court chooses to do so, N.C. Gen. Stat. § 7B-911(b) and (c) specify the findings

the court must make and procedures it must follow in order to terminate jurisdiction

in the juvenile proceeding and transfer the matter to a Chapter 50 civil case. N.C.

Gen. Stat. § 7B-911(b), (c) (2017).

 In this case, the trial court did not terminate its jurisdiction in the order and

specifically informed the parties of their right to file a motion requesting that the

court review the visitation plan, as is required when the trial court retains

jurisdiction. See N.C. Gen. Stat. § 7B-905.1(d) (2017) (“If the court retains

jurisdiction, all parties shall be informed of the right to file a motion for review of any

visitation plan[.]”). Respondent-mother does not contend that the trial court

erroneously retained jurisdiction, or that the court failed to follow statutory

 -8-
 IN RE: Y.I. & J.I.

 Opinion of the Court

requirements in doing so. Respondent-mother claims that “[t]he court did not analyze

whether or not the case should be transferred to a Chapter 50 proceeding[,]” but

provides no support for the assertion. Accordingly, Respondent-mother does not

present a meritorious challenge to the trial court’s retention of jurisdiction.

 Award of Visitation

 Lastly, Respondent-mother contends that the trial court erred in ordering that

visitation occur at a supervised visitation center without addressing the cost, who

would bear the responsibility for payment of that cost, and whether Respondent-

mother had the means to do so. We agree.

 N.C. Gen. Stat. § 7B-905.1 provides, in pertinent part:

 (a) An order that removes custody of a juvenile from a
 parent, guardian, or custodian or that continues the
 juvenile’s placement outside the home shall provide for
 appropriate visitation as may be in the best interests of the
 juvenile consistent with the juvenile’s health and safety.
 The court may specify in the order conditions under which
 visitation may be suspended.

 ....

 (c) If the juvenile is placed or continued in the custody or
 guardianship of a relative or other suitable person, any
 order providing for visitation shall specify the minimum
 frequency and length of the visits and whether the visits
 shall be supervised. The court may authorize additional
 visitation as agreed upon by the respondent and custodian
 or guardian.

N.C. Gen. Stat. § 7B-905.1(a), (c) (2017).

 -9-
 IN RE: Y.I. & J.I.

 Opinion of the Court

 In the present case, the trial court ordered that:

 Visitation shall take place as follows: [Respondent-mother]
 shall have visitation with the juveniles 2 times per month
 for a minimum of one hour each time, supervised by either
 Gaston County Visitation Center or Carolina Solutions. If
 arrangements for the visitations do not take place within
 the next 30 days, then the parties shall motion the case
 back on for the court to address a visitation plan for
 [Respondent-mother].

 While the trial court adhered to the statutory requirements by setting forth

“the minimum length and frequency of the visits and whether the visits shall be

supervised[,]” the trial court’s order is not specific enough to allow this Court to

determine whether the trial court abused its discretion in setting the conditions of

visitation. In In re J.C., 368 N.C. 89, 772 S.E.2d 465 (2015) (per curiam), our Supreme

Court remanded for additional findings of fact where “[t]he district court made no

findings whether [the] respondent mother was able to pay for supervised visitation

once ordered[,]” reasoning that “[w]ithout such findings, our appellate courts are

unable to determine if the trial court abused its discretion by requiring as a condition

of visitation that visits with the children be at [the] respondent mother’s expense.”

Id.

 In this case, the trial court did not determine what costs, if any, would be

associated with conducting supervised visitation at Gaston County Visitation Center

or Carolina Solutions. Given that the trial court relieved DSS of any further

responsibility in the case, it appears likely that Respondent-mother would be

 - 10 -
 IN RE: Y.I. & J.I.

 Opinion of the Court

required to pay for visitation, although the court failed to specify who was to bear any

such expense. In the event the trial court intended for Respondent-mother to bear

the cost of visitation, the court failed to determine whether Respondent-mother had

the ability to pay. As a result, we vacate the portion of the permanency planning

order regarding visitation and remand for additional findings of fact, addressing

whether Respondent-mother is to bear any costs associated with conducting visits at

the supervised visitation centers, and if so, whether Respondent-mother has the

ability to pay those costs.

 Conclusion

 In sum, we vacate the portion of the order establishing a visitation plan and

remand for further findings of fact. The trial court may, in its discretion, hold

additional hearings in this matter to address these issues. The remainder of the trial

court’s order is affirmed.

 AFFIRMED IN PART; VACATED IN PART AND REMANDED.

 Judges CALABRIA and TYSON concur.

 - 11 -