IN THE SUPREME COURT OF NORTH CAROLINA

No. 390A19

Filed 14 August 2020

IN THE MATTER OF: L.E.W.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order entered

on 1 April 2019 by Judge Robert J. Crumpton in District Court, Alleghany County,

and on appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 16

July 2019 by Judge Jeanie R. Houston in District Court, Alleghany County. This

matter was calendared for argument in the Supreme Court on 29 July 2020 but was

determined on the record and briefs without oral argument pursuant to Rule 30(f) of

the North Carolina Rules of Appellate Procedure.

*Anné C. Wright and John Benjamin "Jak" Reeves for petitioner-appellee Alleghany County Department of Social Services.*

*Erin K. Otero, GAL Appellate Counsel, for appellee Guardian ad Litem.*

*Deputy Parent Defender Annick Lenoir-Peek for respondent-appellant mother.*

ERVIN, Justice.

Respondent-mother Christine W. appeals from orders eliminating

reunification from the permanent plan for her daughter L.E.W.[1] and terminating her

parental rights in the child. After careful consideration of the arguments advanced

---

[1] L.E.W. will be referred to throughout the remainder of this opinion as "Luna," which is a pseudonym used to protect the identity of the juvenile and for ease of reading.

in respondent-mother's brief in light of the record and the applicable law, we hold that the challenged permanency planning and termination of parental rights orders should be affirmed.

## I. Factual Background

The Alleghany County Department of Social Services became involved with respondent-mother and respondent-father Brandon W. in February 2017, prior to Luna's birth, based upon reports alleging domestic violence between and substance abuse involving the parents. Following an investigation into these reports, the parents entered into an in-home services agreement with DSS on 30 March 2017.

Luna was born on 28 April 2017. In June 2017, DSS received reports that the parents were continuing to engage in acts of domestic violence and were failing to properly feed Luna. In an attempt to address these concerns, the parents entered into a safety plan with DSS in which they agreed to feed Luna every two hours and to attend regular appointments at which Luna's weight would be checked.

On 26 June 2017, Luna was diagnosed with failure to thrive. On 3 July 2017, the parents failed to bring Luna to an appointment to check her weight despite the fact that multiple attempts had been made to have the parents keep that appointment. On 5 July 2017, DSS filed a petition alleging that Luna was a neglected juvenile and obtained the entry of an order authorizing it to take Luna into non-secure custody.

On 5 December 2017, Judge Houston entered an order adjudicating Luna to be a neglected and dependent juvenile,[2] placing Luna in the legal and physical custody of DSS, granting supervised visitation to the parents, and ordering the parents to comply with an Out of Home Family Services Agreement into which they had entered with DSS. After a permanency planning review hearing held on 3 July 2018, Judge Crumpton entered an order on 31 July 2018 in which he set the permanent plan for Luna as termination of parental rights with a concurrent plan of reunification.

On 27 September 2018, DSS filed a petition seeking to have both parents' parental rights in Luna terminated on the grounds of neglect, willful failure to make reasonable progress toward correcting the conditions that had led to Luna's removal from the family home, failure to pay a reasonable portion of the cost of the care that had been provided to Luna, dependency, and abandonment. N.C.G.S. § 7B-1111(a)(1)–(3), (6)–(7) (2019). On 5 March 2019, Judge Crumpton conducted a permanency planning hearing, which led to the entry of an order on 1 April 2019 that eliminated reunification with the parents from Luna's permanent plan, relieved DSS from any obligation to attempt to effectuate reunification between Luna and the parents, and changed Luna's permanent plan to a primary plan of termination of

---

[2] As an aside, we note that the trial court lacked the authority to adjudicate Luna to be a dependent juvenile because dependency was not alleged in the initial juvenile petition. *See* N.C.G.S. § 7B-802 (2019) (providing that "[t]he adjudicatory hearing shall be a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition").

parental rights coupled with a concurrent plan of guardianship. On 29 April 2019, respondent-mother filed a notice preserving her right to seek appellate review of Judge Crumpton's permanency planning order.

After a hearing held on 1 April 2019, Judge Houston entered an order on 16 July 2019 in which she found that both parents' parental rights in Luna were subject to termination based upon each of the grounds for termination set out in the termination petition and that it would be in Luna's best interests for the parents' parental rights in Luna to be terminated. As a result, the trial court terminated the parents' parental rights in Luna.[3]

On 5 August 2019, respondent-mother noted an appeal from Judge Houston's termination order to this Court pursuant to N.C.G.S. §§ 7A-27(a)(5) and 7B-1001(a1)(1). On 17 December 2019, DSS and the guardian ad litem filed a motion seeking to have respondent-mother's appeal from the 1 April 2019 permanency planning review order dismissed on the grounds that no reference to that order had been made in respondent-mother's notice of appeal. On 20 December 2019, respondent-mother filed a petition seeking the issuance of a writ of certiorari authorizing appellate review of the 1 April 2019 permanency planning order. On 9 January 2020, this Court entered orders granting the dismissal motion and allowing

---

[3] Respondent-father has not challenged the permanency planning order or Judge Houston's decision to terminate his parental rights in Luna on appeal before this Court.

respondent-mother's certiorari petition. As a result, we are reviewing both the permanency planning and the termination orders.

## II. Substantive Legal Analysis

### A. Permanency Planning Review Order

### 1. Standard of Proof

As an initial matter, respondent-mother contends that Judge Crumpton misstated the applicable standard of proof in the 1 April 2019 permanency planning order. More specifically, respondent-mother contends that Judge Crumpton erroneously stated in the challenged permanency planning order that "the court finds that the following findings of fact have been proven by clear, cogent, and convincing evidence." We conclude that respondent-mother is not entitled to relief from the trial court's permanency planning order on the basis of this argument.

As this Court has stated:

> "The essential requirement[ ] at . . . the review hearing[ ] is that sufficient evidence be presented to the trial court so that it can determine what is in the best interest of the child." In light of this objective, neither the parent nor the county department of social services bears the burden of proof in permanency planning hearings, and the trial court's findings of fact need only be supported by sufficient competent evidence.

*In re L.M.T.*, 367 N.C. 165, 180, 752 S.E.2d 453, 462 (2013) (alterations in original) (citations omitted). As a result, respondent-mother is correct in pointing out that the standard of proof set out in the challenged permanency planning order conflicts with

the standard of proof applicable to permanency planning proceedings as articulated in this Court's prior decisions.

Although respondent-mother asserts that the "confusion" reflected in the trial court's misstatement of the applicable standard of proof adversely affected her chances for a more favorable outcome at the permanency planning hearing, we believe that the trial court's error worked in favor of, rather than against, respondent-mother's chances for a more favorable outcome given that the decision to eliminate reunification from Luna's permanent plan and to reduce respondent-mother's visitation with Luna rested upon findings of fact that required DSS to present stronger proof than the law actually required. As the Court of Appeals has clearly held in cases subject to Chapter 7B of the North Carolina General Statutes, "to obtain relief on appeal, an appellant must not only show error, but that . . . the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action." *In re B.S.O.*, 234 N.C. App. 706, 713, 760 S.E.2d 59, 65 (2014) (alteration in original) (quoting *Starco, Inc. v. AMG Bonding and Ins. Servs.*, 124 N.C. App. 332, 335, 477 S.E.2d 211, 214 (1996)). Thus, we hold that Judge Crumpton's misstatement of the applicable standard of proof in the 1 April 2019 permanency planning order constituted harmless error that does not entitle respondent-mother to relief from the challenged order.

2. Elimination of Reunification from Luna's Permanent Plan

Secondly, respondent-mother argues that Judge Crumpton erred by failing to make the factual findings required by N.C.G.S. § 7B-906.2 in eliminating reunification with the parents from Luna's permanent plan. More specifically, respondent-mother argues that Judge Crumpton erred in the course of eliminating reunification from Luna's permanent plan because "[n]one of the findings of fact made the ultimate required finding that reunification efforts would be futile or inconsistent with Luna's needs." We do not find respondent-mother's argument persuasive.

As we have previously stated, appellate review of a trial court's permanency planning review order "is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law," *In re L.M.T.*, 367 N.C. at 168, 752 S.E.2d at 455 (alteration in original) (quoting *In re P.O.*, 207 N.C. App. 35, 41, 698 S.E.2d 525, 530 (2010)), with "[t]he trial court's findings of fact [being] conclusive on appeal if supported by any competent evidence." *Id.* "At a permanency planning hearing, '[r]eunification shall be a primary or secondary plan unless,' *inter alia*, 'the court makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety.'" *In re J.H.*, 373 N.C. 264, 268, 837 S.E.2d 847, 850 (2020) (alteration in original) (quoting N.C.G.S. § 7B-906.2(b) (2019)). As part of that process, the trial court is required to make written findings "which shall demonstrate the degree of success or failure toward reunification," including:

> (1)     Whether the parent is making adequate progress within a reasonable period of time under the plan.
>
> (2)     Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
>
> (3)     Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
>
> (4)     Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

N.C.G.S. § 7B-906.2(d) (2019).  Although "use of the actual statutory language [is] the best practice, the statute does not demand a verbatim recitation of its language." *In re L.M.T.,* 367 N.C. at 167, 752 S.E.2d at 455.  Instead, "the order must make clear that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time."  *Id.* at 167–68, 752 S.E.2d at 455 (cleaned up).   In *In re L.M.T.*, we upheld a permanency planning order as "embrac[ing] the substance of the statutory provisions requiring findings of fact that further reunification efforts 'would be futile' or would be inconsistent with the juvenile's health, safety, and need for a safe permanent home within a reasonable period of time" based upon findings that the parents had created an injurious environment for the child and that the parents had engaged in substance abuse, domestic violence, and deceptive activities directed at the court and a conclusion that

the relevant Department of Social Services should be relieved of reunification and visitation efforts. *Id.* at 169, 752 S.E.2d at 456.

In the challenged permanency planning order, Judge Crumpton found as a fact that:

> 5.  The minor child was diagnosed as "failure to thrive" due to the neglect of the parents. Upon going into DSS custody, the child immediately began gaining weight. The parents continue to ignore requests of the department to properly feed the child at visits. The parents seem to think the child is over-eating although the child appears to now be healthy.
>
> 6.  The parents admitted to several incidents of domestic violence which they referred to as "arguments[.]" These incidents seem volatile and the parents seem dismissive of them. On one occasion, law enforcement was called. On another, the mother was seeking medical treatment and the father made her leave due to a fight rather than getting treatment.
>
> . . . .
>
> 13.  The evidence heard was that the parents have complied with portions of their plan, but it has not been completed. . . .
>
> 14.  The mother moved away in May 2018 to Louisiana and stopped working her case plan. Prior to doing so, she dismissed a pending domestic violence order against the father. The mother moved back to North Carolina a few months later and indicated she wanted to work her case plan and also took out a new [domestic violence order] against the father. The department is concerned that substantial efforts have not been made to alleviate the concerns that originally caused the removal of the minor child.

15. The Court remains extremely concerned about domestic violence affecting the minor child and the parents' ability to provide adequate food for the minor child.

16. Since the last hearing, the mother has made some efforts to work her plan. However, the Court remains concerned about the lack of progress over such a substantial amount of time. The Court understands the difficulty caused by her moving away, but this was her choice to move and not work her plan. Since moving back, the mother has again moved to Virginia. This has caused her difficulties with finding work. The department has been unable to confirm the mother's housing and has requested an [Interstate Compact on the Placement of Children home study] which has not been completed.

17. The mother is attending her [D]aymark appointments sporadically. She was recommended for the women's trauma group. Since 11/14/2018 to present, she could have attended 12 sessions but has only attended 7. The mother is not employed despite being licensed as a CNA in [North Carolina]. The mother formerly had a good job earning over $12 per hour but quit. The mother does not have proof of housing. She indicates that she has housing but does not have to pay for it. She also testified that her landlord gives her money for expenses. The mother is ordered to pay child support but has not made a payment since November of 2018. The mother is often late to visits and missed the most recent [Children's Development and Services Agency meeting] for the child.

18. The mother testified that she goes to physical therapy three times per week for back pain but is not sure how she hurt her back. She does not have a car. The mother says she cannot get a job but did not explain any efforts to obtain employment. The

mother is permitted to have phone calls with the foster family but indicates she does not utilize them because they can be used against her. The mother has missed visits, but claims it was due to physical therapy or the wea[th]er. She indicates that she has thought about moving back to [North Carolina]. She has a smart phone.

. . . .

21.   Pursuant to [N.C.G.S. §] 7B-906.2, the Court finds that the parents are not making adequate progress under their case plan. However, the Court does acknowledge that the parents remain available to the Court, and therefore finds that a concurrent plan is appropriate. The parents continue to act in a manner inconsistent with the health and safety of the juvenile.

Based upon these findings of fact, Judge Crumpton ordered that "[t]he Department shall hereinafter be relieved of reasonable efforts at this time" and that "[t]he Permanent Plan for the minor child shall be termination of parental rights," that "[t]he concurrent plan shall be guardianship," and that "[a] termination of parental rights petition has been filed."

A careful examination of Judge Crumpton's findings of fact[4] establishes that he addressed each of the factors specified in N.C.G.S. § 906.2(d) by determining that

---

[4] Respondent-mother argues in her brief that "[t]he evidence did not support the trial court's determination that the trial court remained concerned about domestic violence affecting the minor child" and that "there was no evidence to support a finding that [respondent-mother] was unable to provide adequate food for Luna." However, Judge Crumpton stated in the challenged permanency planning order that he was, in fact, "extremely concerned about domestic violence affecting the minor child and the parents' ability to provide adequate food for the minor child." We are unable to see how Judge Crumpton's statement of the extent to which he was concerned about a particular issue does

respondent-mother had not been making adequate progress satisfying the components of her case plan, that respondent-mother had remained in contact with DSS and the court, and that respondent-mother was acting in a manner that was inconsistent with Luna's health and safety. Aside from the fact that there was no necessity for Judge Crumpton to have made findings of fact couched in the relevant statutory language, *In re L.M.T.*, 367 N.C. at 167–68, 752 S.E.2d at 455, and the fact that the findings that we upheld in *In re L.M.T.*—which focused upon the fact that the parents had created an injurious environment for the juvenile and had engaged in substance abuse, domestic violence, and deceptive conduct, *id.* at 169, 752 S.E.2d at 456—cannot be distinguished in any meaningful way from the findings that Judge Crumpton made in this case, which focused upon the trial court's continued concerns about domestic violence between the parents, respondent-mother's failure to consistently attend meetings of the women's trauma group, and her failure to provide proof of housing or to explain her continued unemployment, Judge Crumpton expressly found that "[t]he parents continue to act in a manner inconsistent with the health and safety of the juvenile." In view of the fact that the relevant language from

not suffice to show the existence of that concern. In addition, Judge Crumpton "incorporated" "previous orders of this Court" "by reference" in its 2 November 2018 permanency planning order, in which Judge Crumpton found, as he did in the challenged permanency planning order, that "[t]he parents have not followed through with the feeding schedule and have failed to show or been late to several weight checks," "continue to ignore requests of the department to properly feed the child at visits," and "seem to think the child is over-eating although the child appears to now be healthy." As a result, the challenged findings of fact have adequate record support.

N.C.G.S. § 7B-906.2 is couched in the disjunctive and the fact that the trial court found that respondent-mother was acting "in a manner that is inconsistent with the health and safety of the juvenile," we have no difficulty in holding that Judge Crumpton actually made an ultimate finding of the type that respondent-mother claims to have been omitted. As a result, given the statutory requirement that a permanency planning order that eliminates reunification from the child's permanent plan "must address the statute's concerns," *id.* at 168, 752 S.E.2d at 455, by showing "that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time," *id.* at 167–68, 752 S.E.2d at 455 (cleaned up), and given that the findings of fact contained in the challenged permanency planning order satisfy that legal standard, we hold that respondent-mother's challenge to Judge Crumpton's decision to eliminate reunification with respondent-mother from Luna's permanent plan lacks merit.

### 3. Visitation

In her final challenge to the 1 April 2019 permanency planning order, respondent-mother argues that Judge Crumpton erred by reducing the amount of visitation that she was entitled to have with Luna from two weekly visits, one of which was an unsupervised visit of three hours in duration and the other of which was a supervised visit of one hour in duration, to two monthly visits, both of which would be of one hour in duration, with DSS having the "discretion to increase the

duration or to make them unsupervised." According to respondent-mother, Judge Crumpton abused his discretion by taking this action "[w]ithout finding why these visits were detrimental to the child or needed to be changed," particularly given that there "were no concerns regarding recent unsupervised visits," which "had been on-going, including the Friday before the termination hearing." Once again, we are not persuaded by respondent-mother's argument.

"An order that removes custody of a juvenile from a parent, guardian, or custodian or that continues the juvenile's placement outside the home shall provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety, including no visitation." N.C.G.S. § 7B-905.1(a). "The [visitation] plan shall indicate the minimum frequency and length of visits and whether the visits shall be supervised." N.C.G.S. § 7B-905.1(b). At review and permanency planning hearings, "the court shall consider . . . [several] criteria and make written findings regarding those that are relevant," including "[r]eports on visitation that has occurred and whether there is a need to create, modify, or enforce an appropriate visitation plan in accordance with [N.C.]G.S. [§] 7B-905.1." N.C.G.S. § 7B-906.1(d)(2). We agree with the Court of Appeals that appellate courts "review[ ] the trial court's dispositional orders of visitation for an abuse of discretion," *In re C.S.L.B.*, 254 N.C. App. 395, 399, 829 S.E.2d 492, 495 (2017) (quoting *In re C.M.*, 183 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007)), with an abuse of discretion having occurred

"only upon a showing that [the trial court's] actions are manifestly unsupported by reason." *Id.* (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

Judge Crumpton found as a fact in the challenged permanency planning order that "[t]he mother is often late to visits" and "has missed visits," with respondent-mother attributing these missed visits to the need to participate in physical therapy for an unexplained back injury or the weather. In addition, Judge Crumpton noted that respondent-mother had failed to make "adequate progress under [her] case plan," that "termination of parental rights shall be considered," and that "[t]he parents continue to act in a manner inconsistent with the health and safety of the juvenile" before concluding that "[t]he Permanent Plan for the minor child shall be termination of parental rights" and that "[t]he concurrent plan shall be guardianship." In light of the deficiencies in the manner in which respondent-mother took advantage of her existing opportunities to visit with Luna and Judge Crumpton's decision to eliminate reunification with respondent-mother from Luna's permanent plan, we are unable to say that Judge Crumpton abused his discretion by reducing the extent to which respondent-mother was entitled to visit with Luna. As a result, we conclude that respondent-mother's challenge to the visitation component of the 1 April 2019 permanency planning order lacks merit.

## B. Termination of Parental Rights Order

In her order terminating respondent-mother's parental rights in Luna, Judge Houston concluded that respondent-mother's parental rights in Luna were subject to

termination on the grounds of neglect, N.C.G.S. § 7B-1111(a)(1), willful failure to make reasonable progress toward correcting the conditions that had led to Luna's removal from the family home, N.C.G.S. § 7B-1111(a)(2), failure to pay a reasonable portion of the cost of Luna's care despite having the ability to do so, N.C.G.S. § 7B-1111(a)(3), dependency, N.C.G.S. § 7B-1111(a)(6), and abandonment, N.C.G.S. § 7B-1111(a)(7).[5] In challenging the lawfulness of the termination order before this Court, respondent-mother argues that Judge Houston erred by finding that any of the statutory grounds for terminating her parental rights in Luna existed. As a result of our determination that Judge Houston did not err by determining that respondent-mother's parental rights in Luna were subject to termination based upon her willful failure to make reasonable progress toward correcting the conditions that had led to Luna's removal from the family home pursuant to N.C.G.S. § 7B-1111(a)(2), we hold that Judge Houston did not err by finding the existence of at least one ground for termination in this case.[6]

---

[5] We note that Judge Houston stated that respondent-mother's parental rights in Luna were subject to termination on the basis of abandonment as authorized by N.C.G.S. § 7B-1111(a)(7) in the body of the termination order without making any reference to that ground for termination in its conclusions of law. We need not address this apparent inconsistency in the termination order given our determination that Judge Houston did not err by concluding that respondent-mother's parental rights in Luna were subject to termination for willful failure to make reasonable progress toward correcting the conditions that led to Luna's removal from the family home pursuant to N.C.G.S. § 7B-1111(a)(2).

[6] In light of our determination that Judge Houston did not err by finding that respondent-mother's parental rights in Luna were subject to termination for willful failure to make reasonable progress toward correcting the conditions that led to Luna's removal from the family home as authorized by N.C.G.S. § 7B-1111(a)(2), we will refrain from addressing

-16-

According to N.C.G.S. § 7B-1111(a)(2), a parent's parental rights in a juvenile are subject to termination if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." A trial court should not determine "that a parent has failed to make 'reasonable progress . . . in correcting those conditions which led to the removal of the juvenile' simply because of his or her 'failure to fully satisfy all elements of the case plan goals.'" *In re B.O.A.*, 372 N.C. 372, 385, 831 S.E.2d 305, 314 (2019) (alteration in original) (citation omitted). However, "a trial court has ample authority to determine that a parent's 'extremely limited progress' in correcting the conditions leading to removal adequately supports a determination that a parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2)." *Id.* (citation omitted). Moreover, as the Court of Appeals has correctly noted, the willfulness of a parent's failure to make reasonable progress toward correcting the conditions that led to a child's removal from the family home "is established when the [parent] had the ability to show reasonable progress, but was unwilling to make the effort." *In re Fletcher*, 148 N.C. App. 228, 235, 558 S.E.2d 498, 502 (2002). A trial court's determination that grounds exist to terminate one's parental rights in his or her child

---

respondent-mother's challenges to the remaining grounds for termination set out in Judge Houston's termination order.

is reviewed on appeal for the purpose of determining "whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings support the trial court's conclusions of law." *In re B.O.A.*, 372 N.C. at 379, 831 S.E.2d at 310 (citation omitted).

In determining that respondent-mother's parental rights in Luna were subject to termination based upon her willful failure to make reasonable progress toward correcting the conditions that had led to Luna's removal from the family home, Judge Houston found that, in accordance with her case plan, respondent-mother was required to "learn appropriate developmental care to ensure [Luna] continues to thrive"; "[a]ttend and participate effectively in substance abuse group in order to learn skills and support needed to achieve and maintain sobriety"; "[a]ttend individual therapy, mood and anxiety group . . . in order to deal with life's stressors and to be able to acquire knowledge on how to manage and control her mental health"; "[f]eed[ Luna] the amount of formula specified by Foster Parents, be on time to visits, and demonstrate skills from parenting classes"; "[be] involved and [ ] attend CDSA appointments and meetings" and "[r]emain active in those needed services in order to know how to care for [Luna's] development needs when back in the home"; "[m]aintain employment and stable housing in order to provide [Luna] with a safe, stable home"; and "[a]cquire appropriate, healthy resolution skills" and "utilize the needed resources to be able to control [her] anger and use the skills learned by eliminating domestic violence in the home." According to Judge Houston, even

though respondent-mother had completed parenting classes and substance abuse group sessions by 13 April 2018 and even though respondent-mother was participating in mood and anxiety group therapy as of that date, respondent-mother had "moved away due to domestic violence with the Respondent Father and ceased services until July of 2018." As a result of her decision to leave the area, Judge Houston found that respondent-mother "had to complete a new assessment with Daymark," which recommended that she "attend Women's Trauma group" on a weekly basis. However, respondent-mother "only attended seven out of twelve trauma group sessions since November of 2018." In addition, Judge Houston found that respondent-mother had missed scheduled visits with Luna on 12 February 2018, 16 March 2018, 3 August 2018, 14 December 2018, 25 January 2019, and 13 February 2019 and was late to her scheduled visit on 17 August 2018, resulting in the cancellation of that visit. Moreover, Judge Houston found that the parents "were regularly five to fifteen minutes late to their scheduled visits." Judge Houston further found that respondent-mother had failed to schedule or attend CDSA appointments and meetings in December 2017, January 2018, and March 2018 and had failed to contact CDSA at all after 28 January 2019. Judge Houston's findings reflected that respondent-mother moved to Louisiana to live with her mother in May 2018, moved to Virginia in June 2018, and was unemployed at the time of the termination hearing. Finally, Judge Houston found that respondent-mother had only completed six of thirteen sessions of the Women's Trauma group and appeared to have been involved

in incidents of domestic violence with respondent-father on 21 September 2017, 15 December 2017, 22 December 2017, 24 December 2017, 25 December 2017, 26 December 2017, 30 December 2017, and 30 April 2018.  As a result, given that Judge Houston's findings establish that respondent-mother had failed to attend about half of the Women's Trauma group sessions since November 2018, had missed a material number of Mood and Anxiety group sessions, had failed to appear at most of her individual therapy sessions, had failed to consistently attend her visits with Luna in a timely manner, had failed to consistently participate in the CDSA process, had failed to maintain stable housing and employment, and continued to be involved in incidents of domestic violence with respondent-father until 30 April 2018, we have no hesitation in concluding that Judge Houston's findings of fact amply support her determination that respondent-mother's parental rights in Luna were subject to termination based upon a willful failure to make reasonable progress toward correcting the conditions that had resulted in Luna's removal from the family home as authorized by N.C.G.S. § 7B-1111(a)(2).[7]

---

[7] Although respondent-mother argues that a number of Judge Houston's findings of fact were, in actuality, conclusions of law or were drawn from earlier orders not subject to the clear and convincing evidence standard of proof applicable in termination of parental rights proceedings, N.C.G.S. § 7B-1111(b), the discussion of Judge Houston's findings contained in the text of this opinion is drawn from a portion of the termination order which respondent-mother has not challenged as being devoid of the necessary record support or as being legally deficient on other grounds.  As a result, since "[u]nchallenged findings of fact made at the adjudicatory stage . . . are binding on appeal," *In re D.W.P.*, 373 N.C. 327, 330, 838 S.E.2d 396, 400 (2020) (citation omitted), the findings upon which our decision concerning the lawfulness of Judge Houston's decision to conclude that respondent-mother's

In seeking to persuade us to reach a different result, respondent-mother argues that "[t]here were no concerns over [respondent-mother's] ability to care for her daughter during supervised or unsupervised visits" and that "a parent can only receive unsupervised visits if [he or she] can provide a safe home," citing N.C.G.S. § 7B-903.1(c) (providing that, "[i]f a juvenile is removed from the home and placed in the custody or placement responsibility of a county department of social services, the director shall not allow unsupervised visitation with or return physical custody of the juvenile to the parent, guardian, custodian, or caretaker without a hearing at which the court finds that the juvenile will receive proper care and supervision in a safe home"). In addition, respondent-mother argues that "[f]ive missed visits" does not demonstrate that respondent-mother "was neglectful" and that, prior to 28 January 2019, respondent-mother had consistently attended CDSA." Similarly, respondent-mother argues that "[t]here were no concerns with substance abuse since [respondent-mother] never tested positive for illegal substances"; that DSS did not pay for the services that respondent-mother failed to complete; that, "at times, [respondent-mother's] work schedule and physical therapy for her back interfered with those appointments"; and that Judge Houston "failed to establish how missing these appointments to address her own trauma had an effect on [respondent-mother's] ability to parent Luna." Finally, respondent-mother argues that she "had

parental rights in Luna were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2) rests are properly before the Court for purposes of appellate review.

addressed the domestic violence issue at the time of the termination hearing." As a result, respondent-mother contends that, "[w]hile [she] may not have addressed all the portions of her case plan, at the time of the termination hearing, she was able to parent Luna without domestic violence and [to] appropriately car[e] for her," with "[a]ny failure to complete her case plan [amounting to] elevating form over substance since there was no showing that these failures had [any] effect on [respondent-mother's] ability to care for Luna by appropriately feeding her and [staying] free of domestic violence."

A careful review of Judge Houston's findings relating to respondent-mother's compliance with the provisions of her case plan satisfies us that Judge Houston did not err by determining that respondent-mother did not make reasonable progress toward correcting the conditions that had led to Luna's removal from the family home. Judge Houston's findings establish that respondent-mother failed to adequately participate in the Women's Trauma group, the Mood and Anxiety group, and individual therapy as required by her case plan. Respondent-mother contends that these portions of her case plan had no relation to her ability to properly care for Luna. However, these portions of respondent-mother's case plan appear to have been intended to address the domestic violence that had characterized respondent-mother's relationship with respondent-father. As a result, respondent-mother's failure to complete these portions of her case plan supports an inference that she had failed to adequately address the domestic violence concerns that constituted one of

the principal bases for Luna's removal from the family home. Moreover, the fact that respondent-mother voluntarily left her employment in order to enhance her ability to comply with the provisions of her case plan overlooks the fact that obtaining and maintaining employment was, in and of itself, a component of that plan. Similarly, respondent-mother does not challenge the validity of Judge Houston's findings concerning the nature and extent of her visitation with Luna or contend that she satisfied the requirement that she obtain and maintain satisfactory housing in which she and Luna could live. Finally, the fact that the last incident of domestic violence between respondent-father and respondent-mother occurred on 30 April 2018 does not mean that respondent-mother has adequately addressed the domestic violence issue given her failure to complete the portions of her case plan that were intended to provide her with the tools that were necessary to avoid becoming entangled in a violent relationship with someone else in the future and given that respondent-father had been incarcerated and in institutional care for mental health concerns during a portion of the time after 30 April 2018. Thus, Judge Houston had ample basis for concluding that, even though respondent-mother had, in fact, made some progress toward compliance with the provisions of her case plan, she had failed to make reasonable progress toward correcting the conditions that had led to Luna's removal from the family home despite having had the ability to do so. As a result, given that the existence of a single ground for termination is sufficient to support the termination of a parent's parental rights, *In re B.O.A.,* 372 N.C. at 380, 831 S.E.2d at

311 (stating that "a finding by the trial court that any one of the grounds for termination enumerated in N.C.G.S. § 7B-1111(a) exists is sufficient to support a termination order"), and given that respondent-mother has not challenged the lawfulness of Judge Houston's determination that the termination of her parental rights in Luna would be in the child's best interests, the challenged termination order should be affirmed.

III. Conclusion

For the reasons set forth above, we conclude that Judge Crumpton did not commit prejudicial error by misstating the applicable standard of proof, eliminating reunification as a component of the permanent plan for Luna, or reducing the amount of visitation that respondent-mother was entitled to have with Luna in the 1 April 2019 permanency planning order. We also conclude that Judge Houston did not err by finding that respondent-mother's parental rights in Luna were subject to termination based upon her willful failure to make reasonable progress toward correcting the conditions that had led to Luna's removal from the family home. As a result, the 1 April 2019 permanency planning order and the 16 July 2019 termination order are affirmed.

AFFIRMED.